UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| NATHAN TUTTLE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) Cause No.1:23-cv- 1892 | |
| v. | ) | |
| | ) | |
| EDISON SCHOOL OF THE ARTS, | ) | |
| BOARD OF SCHOOL COMMISSIONERS OF | ) | COMPLAINT AND |
| THE CITY OF INDIANAPOLIS – IPS, | ) | DEMAND FOR JURY TRIAL |
| AMY BERNS, PENNY GUTHRIE, | ) | |
| CINITA SAYLES, SHAWNA BOLES, | ) | |
| and RENE ERLER | ) | |
| | ) | |
| Defendants. | ) | |

## INTRODUCTION

On March 14, 2023, the Edison School of the Arts Board of Directors ("Board") terminated its CEO/Executive Director, Nathan Tuttle—without providing due process dictated by law, and by its own policies, and after it had allowed an apparently coordinated campaign of defamation, distortion, and malice directed toward Tuttle. Prior to his termination, Tuttle had served as the sole CEO/Executive Director since the School's inception in 2016 and by all measures was an excellent administrator and teacher. Tuttle had never received a negative evaluation, had led the school to above-district averages in all areas.  In fact, only months earlier The Mind Trust, and the Board of School Commissioners of the City of Indianapolis ("IPS") had commissioned Tuttle to "replicate" the Edison model at another failing IPS school.

The Edison School of the Arts ("Edison") is an "Innovation Network School" incorporated in 2016 under Indiana's Innovation Network statute.  In 2014, the Indiana legislature passed Indiana Code § 20-25.7-4-7, a school reform law, allowing the governing board of IPS to authorize Innovation Network Schools. These schools are publicly funded by IPS but are given increased autonomy and must adhere to performance benchmarks set by IPS. The concept is that these schools will innovate and provide personalized learning to better meet student needs.

Under Indiana law, a school corporation's governing board can create an Innovation Network School. Ind. Code § 20-25.7-4-4. IPS chose to do so, and in the fall of 2015, Edison's application was approved along with a grant from the Mind Trust. The Mind Trust was created in 2006 by former Indianapolis Mayor, Bart Petersen, to reform Indianapolis's public schools.  In the spring of 2016, the Edison School of the Arts, was incorporated with the Indiana Secretary of State as a not-for-profit corporation. Ernest Disney-Britton was named the chairperson of the Board, and Tonya Stewart-Overdorf, Ted Givens, Greg Wallis, and Kay Feeney-Caito were elected Board members. Tuttle was named as the School's CEO/Executive Director.

One intent of the Innovation Network Statute was to free schools from the burdens of due process, including collective bargaining agreements, typically associated with traditional public schools.  One provision of the statute provides that Innovation School employees are to be considered "at-will."

However, under Indiana law, the "at-will" presumption may be rebutted if there is evidence that the employee had a contract for a definite or ascertainable term.  *Wynkoop v. Town of Cedar Lake*, 970 N.E.2d 230 (2012).  Indiana State Law and the Innovation Agreement between Edison and IPS explicitly permit Edison to contract with employees per its Collective Bargaining clause.

After formation of the Edison school, the Board conducted public meetings to comply with Indiana's Open Door Laws.  In March of 2018, the Board engaged Heather Harris, of Barnes & Thornburg, as its legal counsel.  In June of 2018, The Board created and approved an Employee Handbook. The Handbook provided that all Edison employees were "at-will" and that the at-will relationship can only be changed if, "in writing and signed by the Core Leadership Team."

The Core Leadership Team consisted of Tuttle and the Board. In 2021, the Core Leadership Team adopted and approved Policies and Bylaws that changed Tuttle's "at-will" employment to that of a contract employee.  The Edison Policies and Bylaws pertaining to the CEO/Executive Director were taken verbatim from IPS's policies, affording Tuttle many of the same rights and responsibilities granted to the IPS superintendent.

Specifically, Tuttle was given a contract with a term of three (3) years, and statutory due process if his contract were to be terminated.  Edison also adopted a policy providing Tuttle with a right to cure if the Board of Directors determined that his performance was unsatisfactory.  In fact, Policy 1220, titled "Employment of the Executive Director," is identical to IPS Policy 1220 regarding the employment of its Superintendent.  These policies were adopted and approved by the Board and were reviewed and approved by the Board's legal counsel.

Tuttle's termination arose from an in-school incident on March 2, 2023. While monitoring a hallway during a passing period, Tuttle overheard an eighth-grade Black student use the word "nigga," when speaking to his classmates. Tuttle immediately reprimanded the student and told the student to report to the Guided Learning Center ("GLC") as punishment. That student repeatedly and directly questioned Tuttle: "[W]hat did I say, Mr. Tuttle?" Asked a direct question, Tuttle provided a direct answer: He repeated the word *while emphasizing that use of the word, in any of its forms, was in violation of the School's Code of Conduct.*

The next day, March 3, 2023, during a protest organized and sanctioned by certain Edison administration, teachers, and staff members, students chanted homophobic slurs and other insults aimed at Tuttle. And on March 7, 2023, the Board conducted a special meeting and allowed several participants to publicly defame and insult Tuttle.

On March 14, 2023, the Board, under the direction of IPS, terminated Tuttle. Its stated reason for the termination was:

Tuttle observed a student using racially inappropriate language and repeated racially inappropriate language while trying to discipline the student and responded inappropriately to the subsequent disruption caused by his actions.

The Board terminated Tuttle—in violation of his contract, without just cause, and without due process—at the pinnacle of his career and in a manner fraught with discrimination and career-destroying falsehoods. Tuttle brings this action for discrimination under Title VII of the Civil Rights Act, breach of his contract, denial of due process pursuant to statute, his contract, and the Fourteenth Amendment of United States Constitution, defamation, and conspiracy to defame.

## I.  PARTIES

1. Plaintiff, Nathan Tuttle, ("Tuttle") is a resident of Boone County, Indiana.

2. Tuttle is a contract employee whose most recent contract term began on March 16, 2022, and was terminated on March 14, 2023.

3. Edison is located at 777 S White River Parkway Drive W, Indianapolis, Indiana, and is governed by its five (5) member Board of Directors: Ernest Disney-Britton, Ted Givens, Greg Wallis, Tonya Stewart-Overdorf, Keesha Dixon and Kay Feeney-Caito.

4. Commissioners are the seven (7) member governing body of the Indianapolis Public School system with a principal location of 120 E. Walnut Street, Indianapolis, Indiana. They are individually identified as: Vinita Moore, Angelia Moore, Kenneth Allen, Nicole Carey, Hope Hampton, Will Pritchard, and Diane Arnold.

5. Amy Berns is the acting principal of Edison School of the Arts.

6. Penny Guthrie is the Director of Advancement and Engagement at Edison School of the Arts.

7. Cinnita Sayles, is a middle school science teacher at Edison School of the Arts.

8. Shawna Boles, is a parent of a student and former instructional assistant at Edison School of the Arts.

9.      Rene Erler, is a former Indianapolis Public School teacher that previously worked for Nathan Tuttle.

10.     Regina Cole is former parent and current Instructional Assistant at Edison School of the Arts.

## II. JURISDICTION AND VENUE

11.     Tuttle was an "employee" within the meaning of 42 U.S.C. § 2000e(f).

12.     Edison is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

13.     IPS contracted with Edison School of the Arts to provide the facility, maintenance, transportation, meals, curriculum, and funding to operate the Edison School.

14.     Tuttle satisfied his obligation to exhaust his administrative remedies by having timely filed his U.S. Equal Employment Opportunity Commission Charge Number 470-2023-03088 against Edison and Commissioners alleging discrimination in violation of the Civil Rights Act of 1964, as amended, because of race and sexual orientation. Tuttle received his Notice of Right to Sue from the EEOC on October 23, 2023 and now timely files his Complaint.

15.     Jurisdiction is conferred on this Court by Title VII of the Civil Rights Act of 1964; 42 U.S.C. § 2000e-5, 28 U.S.C. § 1331, and 28 U.S.C. § 1343.

16.     Jurisdiction over the state law claims is conferred by 28 U.S.C § 1367 as the state law claims are derived from a common nucleus of operative facts.

17.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as most events, transactions and occurrences concerning this matter have arisen in the geographical purview of the Southern District of Indiana.

### III. FACTUAL ALLEGATIONS RELATED TO ALL CLAIMS

18.     Plaintiff re-alleges and incorporates by reference the above paragraphs as if fully

set forth herein.

19.     Edison (formerly IPS School 47) is an Innovation Network School, created

pursuant to Indiana Code § 20-25.7-4 et seq.

20.     Edison was incorporated on November 17, 2016.

21.     The Articles of Incorporation state that, "the Corporation shall comply with all

Indiana laws applicable to innovation network schools, including (but not limited to) the

following provisions of the Indiana Code…(f) I.C. 20-24-6 (employment of teachers and

other personnel in charter schools.)."

22.     Edison operated a K-8 school in the location of former IPS School 47, at 777 South

White River Pkwy W Dr., Indianapolis, IN 46221.

23.     Tuttle was the Principal and Head of School then promoted to CEO/Executive

Director of Edison since its inception.

24.     Nathan Tuttle is a gay White male.

25.     Tuttle and his husband, Burns Gutzwiller, have two adopted children, of which one

is Black and one is White.  Their Black son attended Edison from grades K-3.

26.     On or about February 24, 2022, the Board executed a new Innovation Network School Agreement with IPS to operate the school. IPS provides the public funding, building, utilities, transportation, and food services.

27.     With respect to employees, there were both Edison and IPS employees working within the school.  Pursuant to the Parties agreement, "unless expressly agreed otherwise in writing, employees of Edison shall not be employees of IPS." Sec. 6.2.

28.     With respect to investigations, "the parties agree to reasonably cooperate in any investigation relating to the school that may involve each other's employees to the extent reasonably necessary to promptly and accurately complete any such investigation." Sec. 6.8

29.     IPS Human Resources representative, Erin Stoner, and other IPS officials were involved in the investigation and termination of Nathan Tuttle.

**The March 2, 2023, Incident**

30.     During the passing period on the morning of March 2, 2023, Tuttle was observing students and teachers in a hallway when he heard a Black 8th grade male student use the word, "nigga."

31.     Tuttle immediately approached the student and advised him that such language violated the Edison Code of Student Conduct and told him to report to the Guided Learning Center for detention.

32.     The student, who was in a group of other boys, repeatedly inquired, "[What] did I say Mr Tuttle?"  At that point, Mr. Tuttle repeated the word that the boy had said "nigga," reiterating that the word "nigger," or any of its variations, is inappropriate and a violation of the Student Code of Conduct.  Immediately, that boy and a group of others started to shout that Mr. Tuttle had called them "niggers."

33.     Several of the boys called and/or texted their parents and told them that Mr. Tuttle had called them "niggers."

34.     For the rest of that day, parents of the boys involved came to the school for meetings with Mr. Tuttle, Edison Board member, Ernest Disney-Britton, and other school personnel.  During these meetings, Tuttle and other staff who witnessed the events that morning, asked the students to recount the events to their parents using the words exactly as stated by Tuttle and the students. The meetings established that Tuttle had not called the students a racial slur, or used the word pejoratively; rather, Tuttle had only answered the student's direct question, after being asked repeatedly, as to what violated the student code of conduct.

35.     Tuttle apologized to each of the students and to each of their family members for using the word.

36.     Tuttle publicly read a statement, drafted by Board President, Ernest Disney-Britton, and was assured that he would not be terminated.

37.     Board Chair, Tonya Stuart-Overdorf, in partnership with Disney-Britton, placed Tuttle on administrative leave that evening, for "optics."

**The March 3, 2023, "Protest"**

38.     On March 3, 2023, while Tuttle was on administrative leave, Edison administration and staff members, including Principal Amy Berns, encouraged Edison students to stage a school-wide protest.

39.     Other Edison employees who encouraged the protest included science teacher, Cinnita Sayles, Instructional Assistant Regina Cole, and Director of Advancement and Engagement Penny Guthrie.

40.     Teachers and staff members provided supplies for the students to make placards.

41.     Students created a large poster board that read "Ban Tuttle."

42.     Teachers and staff members created additional fliers that said "Ban Tuttle".

43.     During the protest, some students began chanting homophobic slurs directed toward Mr. Tuttle.

44.     Several students livestreamed the protest on social media, and students were observed during the protest calling Tuttle a "Faggot" and a "Queer."  Students also chanted, "No Mo Homo."

45.     A staff member who refused to allow their students to participate in the protest was verbally reprimanded by Amy Berns.

46.     Another staff member used school property to make approximately 200 color signs, using a crossed-out image of Tuttle which read, "SHOULDN'T HAVE SAID IT PERIOD.  DIDN'T APOLOGIZE AT ALL!!!"  These signs were distributed, hung, and carried during the protest.



47.    Principal Amy Berns, knew of and allowed the distribution, displaying, and carrying of the signs about Mr. Tuttle.

48.    Many administrators and even a board member recommended a virtual school session on March 3, 2023, but Principal Amy Berns insisted that students be present so they could "be heard". This further enflamed the incident and generated intense media coverage.

49.    On the afternoon of March 3, 2023, Penny Guthrie, without authorization, took control of Mr. Tuttle's and the School's Google/Gmail account and later falsely told staff members that Tuttle was intercepting and deleting emails.

50.    Following Tuttle's suspension, two Edison staff members, one Black, one White, used the N-word.  The White teacher, Natalie Gallegos, was not disciplined.   The Black

teacher, Pilar Ammons, who also spoke out against the staff-organized student protest, was
suspended pending investigation.  Both remained employed at Edison.

### The March 7, 2023, Board Meeting

51.     On March 7, 2023, the Board held an Emergency Board Meeting to address the
events of March 2, 2023.

52.     The meeting was publicly announced on several forums including Facebook.

53.     It had never been Edison's practice to announce Board Meetings on multiple
forums in this manner, and public meetings before an investigation are not common
practice for school investigations.

54.     An estimated two hundred people showed up to the meeting, with multiple teachers,
parents, and students speaking to the crowd.

55.     During the meeting, the Board permitted defamatory public statements about
Tuttle's character.

56.     The Board permitted students, parents, and/or staff to imply that Mr. Tuttle and his
spouse are unfit fit parents for their African-American son because they are white.

57.     Those who tried to speak in favor of Tuttle were shouted down by the crowd.

58.     Principal Amy Berns encouraged people, including Shawna Boles, to attend and
speak at the meeting.

59.     Cinnita Sayles addressed the meeting and falsely stated that the students who were
involved in the March 2nd incident with Tuttle were coerced into giving statements
recanting that Tuttle had called them the N-word. Ms. Sayles also falsely stated that many
teachers/staff members had called human resources about Mr. Tuttle when in fact Mr.

Tuttle had never during his tenure at Edison received a complaint or concern from Edison's outsourced human resources vendor.

60.     Regina Cole addressed the meeting and falsely stated that she was in the vicinity of the incident when it occurred.  In fact, she was in another part of building behind closed doors when the incident occurred.

61.     A former IPS teacher, Rene Erler, who worked for Tuttle some nine (9) years prior, gave an interview to FOX 59 News, wherein she disparaged Tuttle, stating, "When I heard what happened at Edison recently, it wasn't surprising because he made a lot of very racially insensitive and sexually insensitive comments throughout the school year that made me uncomfortable, and was the reason I ended up filing a complaint, in 2014."  She went on to state that, "Anyone who can say those things about people of color should not be in charge of a school."

62.     Erler's 2014 complaint to IPS was never substantiated.

63.     IPS Superintendent, Aleesia Johnson, has two children that attend Edison.  Her 8th grade student spoke before the crowded meeting and demanded 3 times that Tuttle be fired.  Johnson's children had attended Edison for over 4 years and neither the parents nor the children had ever raised concerns about Tuttle.

64.     Prior to the March 7th meeting, Tuttle was unaware of the complaints, concerns and issues that were raised.

65.     Tuttle was denied the opportunity to address any of the issues raised at the March 7th meeting.

66.     After the March 2nd incident, an internal investigation was launched by Edison's legal counsel, Barnes & Thornburg.

67.     IPS human resources personnel, Erin Stoner, and others, participated in that investigation, including a nearly six-hour interrogation of Tuttle.

68.     On March 14, 2023, the Edison Board of Directors held a "Special Meeting," and also met in executive session, wherein they passed the following resolution by a vote of 3-0, with 2 members abstaining:

> WHEREAS, the Board had determined that on March 2, 2023, Tuttle observed a student using racially inappropriate language and repeated racially inappropriate language while trying to discipline the student and responded inappropriately to the subsequent disruption caused by his actions.

69.     Tuttle's employment was terminated immediately.

70.     Tuttle was never provided a hearing wherein he could present witnesses and/or confront witnesses who defamed him at the March 7th Board Meeting and in the media.

71.     Tuttle filed his Notice of Tort Claim on March 30, 2023 in compliance with the requirements of the Indiana Tort Claims Act, Indiana Code 34-13-3-1, et seq. (formerly 34-4-16.5-1, et seq.)

☐

#### IV.LEGAL ALLEGATIONS
1.     **Discrimination in Violation of Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 2000e-2(a)**

72.     Plaintiff re-alleges and incorporates by reference the above paragraphs as if fully set forth herein.

73.     Title VII of the Civil Rights Act of 1964, as amended, makes it unlawful for an employer, "(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for

employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).

74.      Plaintiff was discriminated against by his employer because of his sex/sexual orientation and/or race (White) and that of his child (Black).

75.      Edison administrators and staff allowed, even encouraged, students to protest on March 3rd using homophobic slurs to disparage Tuttle.

76.      The Edison Board of Directors and acting administrators took no action to discipline any students or staff who used homophobic slurs, or suggested Tuttle was a racist, during the March 3rd protest.

77.      Tuttle was placed on leave, and ultimately terminated for repeating the N-word on March 2nd; however, other teachers and students who also used the word were not disciplined based on the color of their skin.

78.      The disparate treatment in the enforcement of the Edison Code of Code of Conduct was discriminatory based on race and sexual orientation.

### 2.      Breach of Employment Contract – Denial of Indiana Statutory Due Process

79.      Plaintiff re-alleges and incorporates by reference the above paragraphs as if fully set forth herein.

80.      On March 16, 2022, Tuttle was given a raise, and provided with a new offer of employment from Edison Board member, Greg Wallis, with a salary of $150,000 per year, plus a bonus of $5,000.  This salary was to start on March 25, 2022.  See Attached Offer Letter marked, **Exhibit A**.

81.     In addition, Edison School of the Arts adopted ESA Bylaw Code 1220, which fixed Tuttle's term of employment at three (3) years, and provides that:

> "No person may be employed as CEO, Executive Director of this school unless s/he has a signed employment contract with the Board.  Such contract shall be in the basic form of the regular teacher's contract…"

 A copy of ESA Bylaw Code 1220 is attached hereto and marked, **Exhibit B**.

82.     A "regular teacher contract" is generally prescribed pursuant to Indiana Code 20-28-6-3 as the regular and uniform contract for the employment of teachers pursuant to Indiana Code 20-8-6-4(b).

83.     ESA Bylaw Code 1220 is nearly identical to IPS Bylaw Code 1220 which also sets the IPS Superintendent's position for a period of three (3) years, and contemplates that the Superintendent will be employed subject to the basic form of the regular teacher's contract.

84.     Both Tuttle and the Edison Board of Directors operated under the Offer Letter and Bylaws during the period of March 25, 2022 until Tuttle's termination on March 14, 2023, despite the fact that the Offer Letter was never signed.

85.     Teachers in Indiana are afforded certain due process rights by statute, particularly, the right to notice and a hearing, prior to termination.  Specifically, I.C. 20-28-7.5-2, provides that a teacher must be provided notice, in writing giving the reasons for the preliminary decision to cancel his contract.  Further, that notice, "must inform the teacher that, not later than five (5) days after the teacher's receipt of the notice, the teacher may request a private conference with the superintendent or assistant superintendent."  I.C. 20-28-7.5-2(b).

86.     Edison also adopted a policy on what to do if the services of the CEO/Executive Director were found to be unsatisfactory.  ESA Bylaws and Policies, Code 1241, states that:

> If the services of the CEO, Executive Director are found to be unsatisfactory to the Board, s/he shall be notified by the Board Chair and given an opportunity to correct the conditions.  The contract of the CEO, Executive Director may be terminated during its term <u>in accordance with statutory procedures.</u>  **Exhibit C**

87.     All of Edison's Policies were reviewed and approved by the Board of Directors and their legal counsel.

88.     Tuttle was never provided written notice of his termination, or afforded any opportunity to correct the conditions for which he was allegedly terminated.

89.     Tuttle was not terminated in accordance with statutory procedures.

90.     As CEO/Executive Director, Tuttle was afforded certain due process rights pursuant to the terms of his contract, Indiana Statutes, and the policies adopted by the Edison Board of Directors.

91.     The actions of the Edison Board of Directors and the Board of School Commissioners of the City of Indianapolis ("IPS"), denied Tuttle due process.

92.     Indiana Code sec. 20-28-8-7, outlines the notice requirements when a superintendent's contract is to be terminated. Specifically, it provides that a superintendent can only be terminated "for cause."

93.     Indiana Code sec. 20-28-8-7 provides that a superintendent must receive proper notice of his termination, and if he requests one, a hearing before the governing body.

94.     Tuttle requested a hearing pursuant to 20-28-8-7 and his request was denied on the grounds that his employment was not subject to Indiana statutes regarding teachers and administrators in public schools because Edison is not a public school.

### 3.     Violation of Due Process/Deprivation of Liberty Pursuant to Fourteenth Amendment of US Constitution

95.     Plaintiff re-alleges and incorporates by reference the above paragraphs as if fully set forth herein.

96.     In addition to statutory protections detailed in Tuttle's contract and Edison's policies, Tuttle also has a property interest in his contract as a public employee, paid with public funds.

97.     Edison is funded by IPS with public funds based on student enrollment.

98.     Edison's Board of Directors conduct their meetings publicly, in compliance with Indiana's Open Door Laws.

99.     Edison is a public employer.

100.     Tuttle had a reasonable expectation of getting paid for three (3) years pursuant to the terms of his Offer Letter and Edison's Policies, such that it created property interest.

101.     Tuttle reasonably relied on the expectation of getting paid for three (3) years to his detriment.

102.     A property interest protected by constitutional due process may arise by statute, ordinance, or contract. *Speckman v. City of Indianapolis*, 540 N.E. 2d 1189 (1989).

103.     Tuttle's claim to due process flows from his entitlement to continued employment that exists by virtue of his public employment and his written contract.

104.    By failing to provide Tuttle with a pretermination hearing, the Edison Board of Directors, in cooperation with IPS, deprived Tuttle of his liberty interest in his good name and reputation, and his due process rights under the Fourteenth Amendment of the United States Constitution.

105.    It is fundamental to our system of jurisprudence that life, liberty, or property not be taken by the government without due process of law.

106.    Due process requires that Tuttle be given the opportunity to confront witnesses that disparaged his good name, and to present evidence to clear his name.  "Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and opportunity to be heard are essential." *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1976).

107.    Given the damage to Tuttle's name and reputation, caused by the gross negligence of the Edison Board of Directors, in cooperation with IPS, Tuttle's career as a public school teacher and administrator has been destroyed.

108.    The damages to Tuttle's name and reputation are likely to exceed the statutory cap on damages for Tort Claims in Indiana.

109.    Once the right to federal due process protection for a property or liberty interest is established, a question remains as to what procedures fulfil the due process requirement.

110.    Due process, at a minimum, requires "notice in some proper form and an opportunity to be heard before some tribunal, not necessarily before a court or before a jury." *Speckman v. City of Indianapolis*, 540 N.E. 2d 1189 (1989).

111.    On March 17, 2023, Tuttle, by and through his counsel, requested a hearing before the Edison Board of Directors.  Correspondence to Edison attorney, Heather Harris, is attached hereto and marked, **Exhibit D**.

112.    Edison denied Tuttle's request for hearing.  Correspondence from Heather Harris, dated April 11, 2023, and marked, **Exhibit E**.

### 4.    Defamation – Shawna Boles, Cinnita Sayles, Rene Erler, Penny Guthrie

113.    Plaintiff re-alleges and incorporates by reference the above paragraphs as if fully set forth herein.

114.    The members of the Edison Board, under the guidance of IPS, conducted an emergency public meeting wherein staff, students, and parents, were encouraged to publicly defame Tuttle.

115.    Amy Berns allowed the creation of flyers with Tuttle's image, inside a circle with a red line through it, and encouraged students to post and carry the flyers in protest.

116.    The flyers incorrectly stated that Tuttle did not apologize for repeating the N-word, and the events of March 2nd.

117.    Cinnita Sayles encouraged parents and staff to attend the March 7th Board Meeting to defame and disparage Tuttle.

118.    Sayles falsely told the crowd at the March 7th Board Meeting that the students involved in the March 2nd incident were coerced in to giving a statement that Tuttle did not call them the N-word.

119.    Former IPS school teacher, Rene Erler, gave an interview to FOX 59 News wherein she told the reporter, "When I heard what happened at Edison recently, it wasn't surprising

because he [Tuttle] made a lot of very racially insensitive and sexually insensitive comments throughout the school year that made me uncomfortable, and was the reason I ended up filing a complaint, in 2014." She went on to state that, "Anyone who can say those things about people of color should not be in charge of a school."

120.   Penny Guthrie was hired by Tuttle to recruit students to Edison. She also moderated a parents' Facebook page that was used repeatedly to defame Tuttle.

121.   Guthrie was the gatekeeper as to what posts were allowed to stay or be deleted on the Facebook page.

122.   Guthrie deleted posts that were complimentary of Tuttle's leadership, and allowed to remain only those posts which disparaged Tuttle.

123.   Immediately after Tuttle was placed on administrative leave on March 2, 2023, Guthrie made herself "super user" and gained access and control to the Edison School Board Google account, which included the School's Gmail account.

124.   Edison directed parents to use this account if they had any complaints about the staff or administration.

125.   Guthrie deleted emails to that account, and later falsely claimed at a public Board Meeting that Tuttle deleted parents and staff emails sent to that account.

### 5.     Civil Conspiracy to Defame – Berns, Guthrie, Sayles, Erler

126.   Plaintiff re-alleges and incorporates by reference the above paragraphs as if fully set forth herein.

127.   Indiana law defines a civil conspiracy as "a combination of two or more persons who engage in concerted action to accomplish an unlawful purpose or to accomplish some lawful purpose by unlawful means." *Boyle v. Anderson Fire Fighters Ass'n Local 1262*,

497 N.E.2d 1073, 1079 (Ind. Ct. App. 1986) (citing *Indianapolis Horse Patrol, Inc. v. Ward*, 217 N.E.2d 626 (Ind. 1966)).

128.    Berns, Guthrie, Sayles, and Erler conspired to give false testimony at the Edison Special Board Meeting on March 7, 2023.

129.    As a result of their conspiracy to publicly defame Tuttle, he has suffered irreparable damage to his name and reputation.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff prays for relief as follows:

A.    Order Defendants to pay any and all lost wages and the monetary value of all benefits associated with his employment;

B.    Order Defendants to pay compensatory damages for the mental anguish and consequential harm suffered by Plaintiff;

C.    Order Defendants to pay Plaintiff's reasonable attorney fees and costs;

D.    Order Defendants to pay interest on all sums recoverable; and

E.    Award to Plaintiff all other relief that is just and proper in the premises.

Respectfully submitted,

GOODIN ABERNATHY, LLP

<u>/s/ Christopher E. Clark</u>
Christopher E. Clark, #18577-29
*Attorney for Plaintiff*

### DEMAND FOR JURY TRIAL

Plaintiff, Nathan Tuttle, by counsel, demands a trial by jury on all issues deemed so triable.

Respectfully submitted,

GOODIN ABERNATHY, LLP

/s/ Christopher E. Clark
Christopher E. Clark, #18577-29
*Attorney for Plaintiff*

GOODIN ABERNATHY, LLP
301 East 38th Street
Indianapolis, IN 46205
P: 317/843-2606
F:  317/574-3095
cclark@goodinabernathy.com
03-157